## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | : |
| Plaintiff, | : |
| vs. | : Civil No. CIV-19-1152-F |
| JOHN SPECIAL, | : |
| Defendant, | : |
| and | : |
| MICHAEL MURPHY, | : |
| Relief Defendant. | : |

## **COMPLAINT**

Plaintiff United States Securities and Exchange Commission (the "Commission"), for its Complaint against Defendant John Special and Relief Defendant Michael Murphy, alleges as follows:

### SUMMARY

1.     This action involves insider trading based on material, nonpublic information. Defendant John Special received material, nonpublic information regarding advanced merger discussions between Covidien PLC ("Covidien") and Medtronic PLC ("Medtronic") from his personal friend and business associate, John Kenneth Davidson.  Davidson had learned the information from his personal friend and neighbor, who was on Covidien's board of directors. Davidson entrusted Special with this information with the expectation that Special would keep it confidential and not use it to trade.  Instead, Special purchased Covidien stock and options

1

ahead of the merger being announced to the public, in accounts that he controlled and in an account in the name of his close friend, Relief Defendant Michael Murphy.

2.      On the evening of Sunday, June 15, 2014, Covidien and Medtronic issued a press release announcing that Medtronic would acquire Covidien at a price of approximately $93.22 per share, a 29% premium above the current market price.  The following morning, Special liquidated all of his and Murphy's Covidien holdings, realizing $1.182 million in profits in the accounts he controlled and more than $359,000 in Murphy's account.

3.      By engaging in the conduct described above, Special violated Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [*15 U.S.C. § 78j(b)*] and Rule 10b-5 thereunder [*17 C.F.R. § 240.10b-5*].  Relief Defendant Michael Murphy received gains from Special's trading in his account, over which Murphy has no legitimate claim.  Accordingly, the Commission seeks a Final Judgment: (i) enjoining Special from future violations of Section 10(b) of the Exchange Act [*15 U.S.C. § 78j(b)*] and Rule 10b-5 thereunder [*17 C.F.R. § 240.10b- 5*]; (ii) ordering Special to disgorge his ill-gotten gains together with prejudgment interest; (iii) ordering Special to pay a civil monetary penalty; and (iv) ordering Murphy to disgorge the ill-gotten gains he received.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this action pursuant to Sections 21(d), 21(e), 21A, and 27 of the Exchange Act [*15 U.S.C. §§ 78u(d), 78u(e), 78u-1, and 78aa*].

5.      Venue in this district is proper pursuant to Section 27(a) of the Exchange Act [*15 U.S.C. §§ 78aa(a)*].  Certain of the purchases and sales of securities and acts, practices, transactions, and courses of business alleged in this Complaint occurred within the Western District of Oklahoma, and were effected, directly or indirectly, by making use of the means,

instruments or instrumentalities of transportation or communication in interstate commerce, or of the mails, or the facilities of national securities exchanges.  Specifically, as described in this complaint, Special purchased Covidien securities and participated in relevant communications in this District.  Special's primary residence is also in this District.

## DEFENDANT

6.     **Defendant John Special**, age 67, is a resident of Stillwater, Oklahoma.  He is the president and CEO of Special Energy Corporation and Special Exploration, both involved in the oil and gas industry.  He is also president and CEO of Boot Hill Development Company, a securities trading and finance company.

## RELIEF DEFENDANT

7.     **Relief Defendant Michael Murphy** owns several businesses involved in the oil and gas industry.  He is friends with Special and acquainted with Davidson.  He held a brokerage account in which he allowed Special to trade securities.  Special placed numerous Covidien trades in that account during the time period at issue.

## OTHER RELEVANT PERSONS AND ENTITIES

8.     **John Kenneth "Ken" Davidson** is a resident of Oklahoma City, Oklahoma. He also is involved in the oil and gas industry.

9.     **Covidien PLC** was an Irish global health care products company and manufacturer of medical devices and supplies.  It was headquartered in Dublin, Ireland.  At the time of the relevant trading, Covidien's securities publicly traded in the United States on the New York Stock Exchange.

10.     **Medtronic PLC** is the world's largest medical device company.

## COMMONLY-USED TRADING TERMS

11.     A stock option, commonly referred to as an "option," gives its purchaser/holder the option to buy or sell shares of an underlying stock at a specified price (the "strike price") before a specified time (the "expiration").  Options are generally sold in "contracts," which give the option holder the opportunity to buy or sell 100 shares of an underlying stock.  If the holder does not exercise the option prior to the expiration date, the option expires as worthless.

12.     A "call" option, such as those purchased by Special, gives the purchaser/holder of the option the right, but not the obligation, to purchase a security at a specified strike price prior to expiration.  For example, one "October 2014 $72" call on ABC Co.'s shares would give the purchaser the right to buy 100 ABC shares for $72 per share before the call expired on a specified date in October 2014.  Generally, the buyer of a call option anticipates that the price of the underlying security will increase prior to expiration.  If the call option's strike price is above the price at which the underlying stock is trading, the call option is considered to be "out of the money," because it would be unprofitable to exercise the call and pay more for the stock than the price for which it could be obtained in the market.  Conversely, if the strike price is below the then-current market price, the call is considered to be "in the money," because one could exercise the option, obtain the stock at the strike price, and then sell it at the higher market price for a profit.  For a given expiration month, out of the money options are typically cheaper to buy than those that are in the money.

## FACTS

13.     In April or May 2014, Davidson learned about Medtronic's potential acquisition of Covidien from his close friend and neighbor, who was a member of the Covidien board of

directors (the "Director").  The fact that Covidien and Medtronic were in advanced merger discussions was material and nonpublic.

14.     The Director trusted Davidson with this information based on their close personal relationship, which included a history of sharing confidential personal and business information.  The Director warned Davidson not to trade Covidien securities, and Davidson agreed.  Notwithstanding this promise, Davidson purchased 1,250 shares of Covidien stock on May 15, 2014, and did not tell the Director that he had done so.

15.     On or before May 21, 2014, Davidson divulged to Special certain material, nonpublic information about the merger discussions between Covidien and Medtronic. Davidson trusted Special with this information based on their personal relationship and business association, which included a history of sharing confidential personal and business information. Davidson also had previously mentioned to Special his close relationship with the Director, including the fact that the Director was a board member of several well-known public companies.

16.     Special knew or was reckless in not knowing that Davidson had learned the material, nonpublic information about the Covidien merger from the Director.  Moreover, Davidson shared the information with Special with an expectation that Special would not trade on it.  Special had no knowledge that Davidson had traded on the basis of material, nonpublic information regarding the Covidien merger.

17.     On May 21, 2014, while aware of the information that Davidson had shared with him regarding the Covidien-Medtronic merger, Special purchased 75 out of the money Covidien call options with a strike price of $72.50 and an expiration date in October 2014 in an

account he controlled.  Special had never before invested in Covidien.  He did not inform Davidson about this purchase.

18.     Thereafter, between May 28 and June 13, 2014, while aware of the information that Davidson had shared with him regarding the Covidien-Medtronic merger, Special continued to purchase Covidien stock and options.[1]  Special made purchases in five different accounts that he controlled, which were held at three different brokers, including 2,000 shares of Covidien common stock and an additional 700 Covidien call options.  Whereas Special often used options to hedge other securities positions, the long position he established in Covidien was not hedged and thus reflected confidence that the company's stock price would increase.

19.     At the time, Special did not disclose to Davidson that he had made any of these purchases.

20.     Between May 21 and June 2, 2014, Special also purchased 225 out of the money Covidien call options and 2,500 Covidien shares in an account in the name of Relief Defendant Murphy.[2]  Special and Murphy were close friends.  Murphy knew that Special was a serious and active investor, so he allowed Special to trade in a brokerage account held in Murphy's name. Murphy did not know that Special had purchased Covidien securities while in possession of material, nonpublic information.

21.     At the time, Special did not disclose to Davidson that he had made purchases in the account of Murphy.

22.     On the evening of Sunday, June 15, 2014, Covidien and Medtronic issued a press release announcing that Medtronic would acquire Covidien at approximately $93.22 per

[1] Defendant Special entered into a series of tolling agreements that extended any applicable statute of limitations to cover conduct that occurred in May and June 2014.

[2] Relief Defendant Murphy entered into a series of tolling agreements that extended any applicable statute of limitations to cover conduct that occurred in May and June 2014.

Covidien share.  This was a 29% premium above the current market price.  The following morning, Special liquidated his Covidien holdings, realizing $1.182 million in profits.  That day, Covidien stock traded on volume of more than 68 million shares, compared to an average daily trading volume of approximately 1.3 million shares.

23.     Special also sold Murphy's Covidien holdings on June 16, yielding profits of $359,770.50.  By virtue of Special's trading, Murphy has obtained funds as part, and in furtherance, of violations of the securities laws, and, as a consequence, he has been unjustly enriched.

## FIRST CLAIM FOR RELIEF

### Violations of Exchange Act Section 10(b) and Rule 10b-5 Thereunder Against Defendant John Special

24.     The Commission realleges and incorporates by reference each and every allegation in paragraphs 1 through 23, inclusive, as if fully set forth herein.

25.     Special knew, or was reckless in not knowing, that the information he acquired concerning the potential Covidien merger was material, nonpublic information.

26.     When Davidson communicated this material, nonpublic information to him, Special also knew or reasonably should have known, based on their history, pattern, or practice of sharing confidences, that Davidson expected him to maintain its confidentiality.

27.     By purchasing Covidien options and stock after learning of the potential merger, Special misappropriated material, nonpublic information for securities trading purposes, in breach of a duty of trust and confidence he owed Davidson.

28.     By reason of the actions alleged herein, Special violated Section 10(b) of the Exchange Act [*15 U.S.C. § 78j(b)*] and Rule 10b-5 thereunder [*17 C.F.R. § 240.10b-5*], and unless restrained and enjoined will continue to do so.

## SECOND CLAIM FOR RELIEF

### Equitable Relief Against Relief Defendant Michael Murphy

29.     The Commission realleges and incorporates by reference paragraphs 1 through 28, inclusive, as if fully set forth herein.

30.     Relief Defendant Michael Murphy received gains from trades based on material nonpublic information, over which he has no legitimate claim.

31.     Murphy received the gains described above as part of, and as a consequence of, the securities law violations by Defendant Special described above, under circumstances in which it is not just, equitable, or conscionable for him to retain the funds.

32.     By reason of the foregoing, Murphy has been unjustly enriched.

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that the Court enter a Final Judgment:

### I.

Finding that Special violated the provisions of the federal securities laws as alleged herein;

### II.

Permanently restraining and enjoining Special from, directly or indirectly, engaging in conduct in violation of Section 10(b) of the Exchange Act [*15 U.S.C. § 78j(b)*] and Rule 10b-5 thereunder [*17 C.F.R. § 240.10b-5*];

### III.

Ordering Special to disgorge, with prejudgment interest, all ill-gotten gains as alleged herein;

**IV.**

Ordering Special to pay civil penalties pursuant to Section 21A of the Exchange Act [*15 U.S.C. § 78u-1*];

**V.**

Ordering Relief Defendant Murphy to disgorge the profits he individually received from Special's conduct;

**VI.**

Granting such other and further relief as this Court may deem just, equitable, or necessary.


Dated:  December 12, 2019                    Respectfully submitted,

                                             */s/* Daniel J. Maher

                                             Daniel J. Maher (Mass. Bar 654711)
                                             Carolyn Welshhans
                                             Michael Brennan
                                             Matthew Reilly
                                             *Counsel for Plaintiff*
                                             U.S. SECURITIES AND EXCHANGE COMMISSION
                                             100 F Street, N.E.
                                             Washington, D.C. 20549
                                             Tel: (202) 551-4737 (Maher)
                                             maherd@sec.gov